## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC JASINSKI, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | **Civil Action No. _____** |
| vs. | |
| KIA AMERICA, INC., | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

## CLASS ACTION COMPLAINT

Eric Jasinski, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Complaint against Kia America, Inc. ("Kia" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1.      Vehicle manufacturers have certain basic rules and procedures that must be followed. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from Defendant's breach of these listed duties and rules.

2.      Plaintiff brings this action on behalf of himself and all similarly situated persons who purchased or leased any 2021-2023 Kia Soul and 2021-2023 Kia Seltos ("Class Vehicles").

1

3.     This action is brought to remedy various violations of law in connection with Defendant's manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles.

4.     Specifically, these Class Vehicles have malfunctions regarding their incorrectly manufactured piston oil rings which can result in engine damage and failure, and even potentially cause a fire ("Oil Ring Defect").[1]

5.     In mid-February of 2025, Kia recalled more than 137,000 of the above referenced Class Vehicles ("Recall").[2]

6.     The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

8.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

---

[1] https://www.usatoday.com/story/money/cars/recalls/2025/02/25/kia-recall-seltos-soul-vehicles/80249273007/
[2] *Id.*

9.    Defendant sells its products internationally, throughout the United States and within this judicial district.  This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's registration in Pennsylvania and minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of the Product throughout this District. See *Mallory v. Norfolk Southern Railway Co.*, 143 S.Ct. 2028, 600 U.S. 122, 216 L.Ed. 815 (2023).

10.    Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, given that Defendant sells and distributes their vehicles throughout the United States and within this District.

## PARTIES

11.    Eric Jasinski is a citizen of the State of Florida and resides in Tampa, Florida. Tampa is located within Hillsborough County, Florida.

12.    In June of 2021, Plaintiff purchased his 2021 Kia Soul from Courtesy Kia in Brandon, Florida.

13.    Based on Kia's active and persistent promotions touting the quality of its vehicles and his admiration of Kia vehicles, Plaintiff considered Kia a quality company with a strong reputation for producing reliable vehicles.

14.    In addition to Kia's reputation through its marketing and promotion, Plaintiff decided on the 2021 Kia Soul because he believed it was a high-quality vehicle after a salesman convinced him that the vehicle was highly reliable and came with great technological features.

15.    Since purchasing his 2021 Kia Soul, Plaintiff has only taken the vehicle to the dealership for its routine maintenance as recommended by both the vehicle alert system and the Service Department at Courtesy Kia.

16.     However, through Plaintiff's consistent visits to dealerships, he has never been told of any recalls or defects related to his vehicle's oil ring system.

17.     Defendant is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of Pennsylvania. Defendant's Corporate Headquarters are located at 111 Peters Canyon Road, Irvine, California 92606.

18.     Defendant designs, manufactures, markets, distributes, services, repairs, sells, and leases vehicles, including the Class Vehicles, nationwide and in Pennsylvania. Defendant is the warrantor and distributor of the Class Vehicles in the United States.

19.     Defendant, through various entities, markets, distributes, warrants, and sells Kia automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States, including Pennsylvania.

## FACTUAL ALLEGATIONS

20.     Since 2021, Defendant has designed, manufactured, distributed, sold, and leased the Class Vehicles. Defendant has sold, directly or indirectly, through dealers and other retail outlets, over one hundred thousand Class Vehicles in Pennsylvania and nationwide.[3]

21.     As discussed earlier and in more detail below, the Class Vehicles contain a defect that causes a serious safety concern. The defect with the Class Vehicles is contained in the Oil Ring System.

22.     In more detail, the Class Vehicles' "piston oil rings may have been manufactured incorrectly, which can result in engine failure. According to the online Feb. 17 NHTSA post, the issue can also potentially cause a fire, increasing the risk of crash or injury."[4]

---

[3] https://www.usatoday.com/story/money/cars/recalls/2025/02/25/kia-recall-seltos-soul-vehicles/80249273007/
[4] *Id.*

23.     As demonstrated by the facts above, there is no foreseeable reason for any of the individual parts to fail. Rather, the failure is caused by Defendant's improper engineering, design, or manufacturing.

24.     More than 130,000 of the Class Vehicles with defective oil ring systems have been sold in America.[5]

25.     Plaintiff suffered an injury-in-fact due to an economic loss since all Recalled vehicles were defective at the moment of purchase, therefore the injury was concrete the moment Plaintiff purchased a Class Vehicle. The economic harm can be seen as overpayment, loss of value or loss of usefulness emanating from the loss of the benefit of the bargain. Additionally, there is a loss of resale value.

26.     Defendant failed to deliver to Plaintiff the thing purchased, which was a Class Vehicle free of defects and instead delivered a thing other than what was purchased, a vehicle with the Oil Ring Defect. Defective Vehicles are simply not worth as much. The market value has been diminished because of the defect.

27.     Plaintiff would not have purchased the Class Vehicle or would have paid less for it if he had knowledge of the Oil Ring Defect.

28.     Plaintiff regularly serviced his Class Vehicle and is concerned about driving it due to the dangers of the Oil Ring Defect. More generally, Plaintiff has been driving an unsafe vehicle due to the Oil Ring Defect resulting in diminished value.

29.     The immediate harm to Plaintiff occurred since the harm manifested at the time of purchase. Since the harm occurred at the time of purchase there are no pertinent unknown facts to be discovered later than are necessary for the court to adjudicate Plaintiff's claims.

---

[5] *Id.*

30.     The result of Defendant's recall, which includes a fix whereby dealers will replace the engine free of charge and also install piston-ring sensing noise software free of charge.[6]

31.     The fix will cost Plaintiff hours of his time. This is due to the time spent on replacing a car engine, which can take between 10 and 12 hours of chargeable work.[7]

32.     Defendant's Recall is concerning because it does not offer any foreseeable guarantee that the Oil Ring Defect will go away permanently. Rather, the Recall mentions replacing the engine. The Recall only mentions the possibility of improper manufacturing concerns.

33.     Plaintiff is burdened with a vehicle that has been devalued by Defendant's actions because the value of a car with a known history of engine issues is worth much less than a car with a properly working engine, or at least a history of a working engine with no critical issues.

34.     The Recall does not completely compensate Plaintiff for all damages incurred, even when there are free repairs, including benefit of the bargain damages resulting in diminished value, loss of use, and overpayment of the vehicle as the Class Vehicles were worth less than vehicles sold without the undisclosed defect and incidental damages. Plaintiff also sustained loss of resale value.

35.     Given the above, there is a cognizable risk inherent within this Recall. Unless Defendant has fixed the manufacturing issue with the Oil Ring Defect, it is foreseeable, and should be expected, that the Class Vehicles' engine will fail once again. Defendant's Recall is no more than a repeatedly ineffective waste of time.

36.     In all, Defendant's Recall leaves more questions than answers regarding the Class Vehicles' safety and as such results in a diminution in value for the vehicles in question.

---

[6] *Id.*
[7] https://www.copilotsearch.com/posts/engine-replacement-labor-time-and-cost/

37.    Transitioning back to the repair itself, at a bare minimum, this 10 to 12 hour repair time means that it will take Defendant at a minimum of 1,300,000 hours to repair the Class Vehicles. In a more comprehensible term, 1,300,000 hours amounts to a little more than 148 years.

38.    In addition to the sheer amount of time spent in repair, Plaintiff, like every other Class Member, must spend time and money to transport himself and his defective Class Vehicle to a Kia certified mechanic. For Plaintiff, this service center is Courtesy Kia in Brandon and his commute begins at him home in Hillborough County. Plaintiff's repair-related commute is roughly an eight-mile, 15-minute, one way, trip via US-301 S.[8]

39.    Given the math above, Plaintiff may spend up to twelve and a half, but no less than ten and a half hours, in repairing his Class Vehicle.

40.    In addition to the sheer amount of time spent in repairing his vehicle, Plaintiff is faced with another difficult expense, the price of towing his vehicle. The average cost of towing, per mile, is $4.75 per mile.[9] Given Plaintiff's roughly 8-mile commute, this cost amounts to $38 taken from Plaintiff for his own Class Vehicle to be safely repaired.

41.    Given the additional time it takes for a tow truck to arrive, roughly thirty minutes, Plaintiff's total time spent on his vehicle amounts to eleven to thirteen hours, unless of course one is to assume that Plaintiff drives his potentially unstoppable Class Vehicle to the dealership.[10]

---

[8]

https://www.google.com/search?q=tampa+to+brandon+fl&rlz=1C5OZZY_enUS1152&oq=tampa+to+brandon+fl&gs_lcrp=EgZjaHJvbWUyCQgAEEUYORiABDIICAEQABgWGB4yCAgCEAAYFhgeMggIAxAAGBYYHjIICAQQABgWGB4yCAgFEAAYFhgeMg0IBhAAGIYDGIAEGIoFMg0IBxAAGIYDGIAEGIoFMg0ICBAAGIYDGIAEGIoFMgoICRAAGIAEGIEKIE0gEIMzQzM2owajeoAgewAgHxBVCgEeEFw93G8QVQoBHhBcPdxvEFUKAR4QXD3cY&sourceid=chrome&ie=UTF-8

[9] https://www.thezebra.com/resources/driving/how-much-does-towing-a-car-cost/#:~:text=The%20average%20cost%20per%20mile,mile%20on%20the%20high%20end.&text=Many%20towing%20companies%20may%20also,miles%20you%20need%20to%20go.

[10] https://myautomachine.com/how-long-do-tow-trucks-take/

42.    In all, Defendant's Recall amounts to tens of thousands of hours and dollars needlessly taken from Plaintiff and other Class Vehicle owners.

## CLASS ACTION ALLEGATIONS

43.    Plaintiff brings this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

**Nationwide Class:** All persons in the United States who purchased or leased any 2021-2023 Kia Soul or 2021-2023 Kia Seltos.

**Pennsylvania Subclass:** All persons from Pennsylvania who purchased or leased any 2021-2023 Kia Soul or 2021-2023 Kia Seltos.

44.    Together, the Nationwide Class and Pennsylvania Subclass will be collectively referred to as the "Class" or "Classes." Members of these Classes will be referred to as "Class Members".

45.    Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

46.    Excluded from each of the putative classes is any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending.

47.    The proposed class definitions may be amended or modified from time to time.

48.    The particular members of the (i) Nationwide Class, and (ii) Pennsylvania Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

49.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50.    The Proposed Classes are so numerous that the joinder of all members is impracticable.

51.    This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

52.    **Numerosity: Fed. R. Civ. P. 23(a)(1) –** Upon information and belief, the Classes are so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

53.    **Typicality: Fed. R. Civ. P. 23(a)(3) –** Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Vehicle that contained the same Oil Ring Defect found in all other Class Vehicles.

54.    **Adequacy: Fed. R. Civ. P. 23(a)(4) –** Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and he intends to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

55.     **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members and questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources including those from the state of Pennsylvania.

56.     **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – Common Questions of law and fact exist as to all Class Members. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

   a.   Whether the Class Vehicles contain the alleged Oil Ring Defect;

   b.   Whether the Oil Ring Defect would be considered material by a reasonable consumer;

   c.   Whether the Oil Ring Defect would constitute an unreasonable safety risk;

   d.   Whether Defendant had a duty to disclose the Oil Ring Defect to Plaintiff and other Class Members;

   e.   Whether Defendant knew or reasonably should have known of the Oil Ring Defect before it sold and leased Class Vehicles to Plaintiff and Class Members;

   f.   Whether the Oil Ring Defect has diminished the value of the Class Vehicles;

   g.   Whether the Oil Ring Defect is capable of being repaired;

   h.   Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing, replacing, or otherwise remedying the Oil Ring Defect;

i.   Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective engine parts;

j.   Whether Defendant breached the implied warranty of merchantability pursuant to state law and/or the UCC;

k.   Whether Defendant is liable for fraudulent omission;

l.   Whether Defendant was unjustly enriched;

m.  Whether Plaintiff and other Class Members are entitled to damages and other monetary relief.

## CAUSES OF ACTION

### COUNT I
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

57.   Plaintiff incorporates Paragraphs 1-55 as if fully set forth herein.

58.   Plaintiff brings this count on behalf of himself and the Classes.

59.   Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

60.   The Class Vehicles are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

61.   Defendant entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiff and Class Members for personal use.

62.   The implied warranty of merchantability included with the sale of each Class Vehicle means that Defendant guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The

implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

63.    Defendant breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation and the Class Vehicles were not substantially free from defects. After all, Defendant did not indicate that the Class Vehicles would contain the Oil Ring Defect.

64.    Given that Plaintiff and Class Members are unable to safely drive the Class Vehicles without risk of engine damage or fire, the Class Vehicles are not fit for their particular purpose of legal transportation and usage. Defendant's Recall does nothing to truly address this risk unless they address the faulty manufacturing. Rather, the Recall replaces the engine with no guarantee they will fix the manufacturing issue.

65.    Defendant's warranty expressly applies to the purchaser of the Class Vehicles, creating privity between Defendant and Plaintiff and Class Members.

66.    Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

67.    Defendant had been provided sufficient notice of its breaches of implied warranties associated with the Class Vehicles. Defendant was put on actual notice of its breach through the contract between Plaintiff and Class Members and Defendant, and its review of consumer complaints.

68.    Had Plaintiff, Class Members, and the consuming public known that the Class Vehicles would not be provided with proper braking systems, they would not have purchased the

Class Vehicles or would have paid less for them. To reiterate, had Plaintiff and Class Members known of the Oil Ring Defect, they would not have purchased the Class Vehicles.

69.    As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

70.    Plaintiff suffered injury in that he purchased a Vehicle that is worthless. For all intents and purposes, Plaintiff's vehicle is now a notoriously unsafe vehicle whose engine could catch fire.

71.    Plaintiff seeks recovery for his economic harm based on overpayment, loss in value, or loss of usefulness emanating from the loss of the benefit of the bargain upon purchase of the Class Vehicle.

72.    Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell his Vehicle, the reputation of being a vehicle with a faulty engine will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

73.    Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's Recall and accompanying required repairs. As discussed above, Plaintiff will spend hours upon hours tending to Defendant's recall. Had Defendant produced a vehicle that was roadworthy and reliable, Plaintiff would not have had to spend hours upon hours of his life tending to this Recall. Plaintiff did not bargain for, or pay for, a vehicle that has a known issue that the engine could catch fire.

## COUNT II
## FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT

74.     Plaintiff incorporates Paragraphs 1-55 as if fully set forth herein.

75.     Plaintiff brings this count on behalf of himself and the Classes.

76.     Defendant had knowledge of the Oil Ring Defect or should have discovered the defect.

77.     Defendant is the "who" that knowingly failed to disclose a material defect to Plaintiff and the Class Members at the time they purchased the Class Vehicles.

78.     The Oil Ring Defect is the "what" which was omitted and concealed.

79.     Defendant failed to disclose the Oil Ring Defect so it could sell more Class Vehicles and/or sell Class Vehicles at a premium, which is "why" the information was not disclosed.

80.     The "how" of Defendant's concealment of information is by denying the existence of the defect after numerous consumer complaints or based on testing or by simply not telling consumers of the Oil Ring Defect or not to be forthcoming so business would not be disrupted by a NHTSA investigation or recall or negative publicity.

81.     The "where" of the concealment is in every communication regarding the Class Vehicles to the Plaintiff and the Class Members.

82.     The "when" is the failure to disclose the Oil Ring Defect at any time prior to purchase of the Class Vehicles by the Plaintiff or Class Members.

83.     Defendant had actual knowledge that the Class Vehicles suffered from an inherent defective Oil Ring, was defectively designed and/or manufactured, and was not suitable for their intended use prior to their sale.

84.     Having been aware of the Oil Ring Defect and knowing that Plaintiff and Class Members could not have reasonably been expected to know of the Defect, Defendant had a duty

to disclose the Oil Ring Defect to Plaintiff and Class Members in connection with the sale of the Class Vehicle. Defendant had a further duty to disclose the Defect because:

    a.   Defendant was in a superior position to know the true state of facts about the Oil Ring Defect contained in the Class Vehicles, and Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Class Members;

    b.   Given the Oil Ring Defect's technical and hidden nature, Plaintiff and Class Members lack the sophistication and expertise in vehicle components that would be necessary to discover the Oil Ring Defect on their own;

    c.   Defendant knew that the Oil Ring Defect gave rise to safety concerns for the consumers who use the Class Vehicles, before Plaintiff's and the Class Members' purchases, and the omitted facts relating to the Defect were material because they directly impact the safety of the Class Vehicles and would have been part of the decision to buy or lease the Class Vehicles;

    d.   Defendant made incomplete representations about the safety and reliability of the Class Vehicles while actively withholding and concealing the material facts about the known defective nature of the Class Vehicles from Plaintiff and Class Members. In uniform advertising and materials provided with each Class Vehicle, Defendant intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Oil Ring Defect. Because it volunteered to provide information about the Class Vehicles that it marketed and offered for sale and lease to consumers, Defendant had the duty to disclose the whole truth.

    e.   Plaintiff and Class Members expressly reposed trust and confidence in Defendant in regard to their purchase or lease of a Class Vehicle as purchaser and seller.

85.     Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Vehicles, in direct breach of its duties.

86.     The various venues Defendant used to sell the Class Vehicles failed to disclose the Oil Ring Defect.

87.     The fact that Defendant's Class Vehicles contained the Oil Ring Defect is a material fact as braking systems are one of the most critical safety devices for automobiles and a reasonable person would find it important when deciding to purchase or lease a new or used motor vehicle and because it directly impacts both the value and safety of the Class Vehicles purchased or leased by the Plaintiff and Class Members.

88.     Defendant was knowledgeable of the falsity of the safety of Braking System Defect and/or recklessly disregarded the truth or falsity of the dangerous nature of the Oil Ring Defect.

89.     Defendant intended for Plaintiff and Class Members to rely and act upon such falsity as part of Defendant's commercial operations to sell vehicles – which they did by purchasing and leasing the Class Vehicles at the prices they paid while believing that their vehicles would not have an Oil Ring Defect that would affect the quality, reliability, and safety of the Class Vehicles.

90.     Plaintiff's and Class Members' reliance was reasonable, as they had no way of discerning or learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class Members did not, and could not, unravel Defendant's deception on their own.

91.     Plaintiff and Class Members would not have purchased the Class Vehicles had they known of the Oil Ring Defect, or would have paid less for the Class Vehicles. Plaintiff and the Class did not know of such Oil Ring Defect and relied upon the false presentation of safety in their purchases of Class Vehicles.

92.     The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Whether a vehicle becomes inoperable when the Brake System fails is a material safety concern. Had Plaintiff and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

93.     Defendant actively concealed and suppressed these material facts, in whole or in part, in order to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendant and their products. They did so at the expense of Plaintiff and Class Members.

94.     If Defendant had fully and adequately disclosed the Oil Ring Defect to consumers, Plaintiff and Class Members would have seen such a disclosure.

95.     Through Defendant's omissions and concealment regarding the Oil Ring Defect within the Class Vehicles, Defendant intended to induce, and did induce, Plaintiff and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

96.     Plaintiff and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase or lease of Defendant's defective Class Vehicles.

97.     Defendant failed to disclose the Oil Ring Defect so it could sell more Class Vehicles and/or sell Class Vehicles at a premium.

98.     In sum, Defendant knew about but failed to disclose the Braking System Defect from the time the Class Vehicles were first placed on the market to the Recall, these Class Vehicles

were sold through various channels by Defendant, and if Plaintiff and the Class Members had known of the alleged defect, they would not have purchased or leased the Class Vehicles, or would have paid less for them.

99.    These claims are based on fraudulent conduct that began before the purchase contract and thus distinct from a contract claim.

100.    As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase or lease of the Defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the Defective Vehicles and recover damages.

101.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Classes' rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

102.    Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

103.    Plaintiff seeks recovery for his economic harm based on overpayment, loss in value, or loss of usefulness emanating from the loss of the benefit of the bargain upon purchase of the Class Vehicle.

104.    Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised the Class Vehicles.

105.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

## COUNT III
## UNJUST ENRICHMENT

106.    Plaintiff incorporates paragraphs 1-55 as if fully set forth herein.

107.    Plaintiff brings this count on behalf of himself and the Classes.

108.    Through wrongful acts or omissions Defendant convinced Plaintiff and Class Members to pay a premium price for a defective Class Vehicle instead of a vehicle free from defects as they were led to believe.

109.    Plaintiff, and the other members of the Classes, conferred benefits to Defendant by paying a higher price than the true value of the Class Vehicles manufactured by Defendant which had defects rendering them less valuable because of the Oil Ring Defect.

110.    Defendant had a realization of the benefit in the form of premium monies paid to purchase Defendant's defective Class Vehicles from a dealership affiliated with Defendant.

111.    Defendant voluntarily accepted and retained this benefit under conditions where it was unjust to do so as Plaintiff and Class Members paid higher prices for defective vehicles as a result of the wrongful acts or omission by Defendant given the Oil Ring Defect. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

112.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Vehicles without providing working brakes in the Class Vehicles, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

113.    The circumstances, as described herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

114.    Defendant manufactured, marketed, and sold the Class Vehicles under the guise of these Vehicles being safe, operable, and stoppable. Instead, Defendant sold Vehicles had the potential to catch fire. And, rather than refunding or reimbursing Plaintiff and Class Members the difference in value related to the diminished purchase price and diminished resale value, Defendant has offered to simply fix the Class Vehicles with a fix that appears to do no more than replace defective oil rings without addressing the manufacturing issue.

115.    Plaintiff and members of the Classes have been injured by reason of this unjust enrichment. Plaintiff alleges unjust enrichment in the alternative to an adequate remedy at law.

116.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT IV
## STRICT LIABILTY: DESIGN DEFECT

117.    Plaintiff incorporates paragraphs 1-55 as if fully set forth herein.

118.    At all times relevant, Defendant was engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the Class Vehicles and otherwise placed the Class Vehicles in the market and stream of commerce for sale to the consuming public.

119.    Plaintiff and Class Members used the Class Vehicles in a reasonably foreseeable manner.

120.    At all times, Defendant held final design approval authority for the subject Class Vehicles.

121.    The piston oil rings may have been manufactured incorrectly, which can result in engine failure or catch fire

122.    The Class Vehicles' design is excessively dangerous. The risk of danger inherent in the Class Vehicles design and manufacture outweighs any benefit of the design.

123.    Defendant knew or should have known that Plaintiff and the Class Members would purchase and use the Class Vehicles without inspection for defect. Aside from being entirely uncommon for a consumer to disassemble and inspect a vehicle, it is also unlikely to be permitted by Defendant's dealerships and/or other resellers.

124.    As a direct and proximate result of Defendant's conduct, including actions, omissions, and misrepresentations, Plaintiff and the Class have sustained damages:

> a.   Economic damages due to this Defect as they are now stuck with vehicles that are unsafe and relatively worthless when compared to the purchase price; and
>
> b.   Noneconomic damages including emotional distress, inconvenience, loss of enjoyment, past and future.

125.    Plaintiff seeks recovery for his economic harm based on overpayment, loss in value, or loss of usefulness emanating from the loss of the benefit of the bargain upon purchase of the Class Vehicle.

## **COUNT V**
## **STRICT LIABILTY: MANUFACTURING DEFECT**

126.    Plaintiff incorporates paragraphs 1-55 as if fully set forth herein.

127.    This Count is pled in the alternative to the above count of design defect.

128.    At all times relevant, Defendant was engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the Class Vehicles and otherwise placed the Class Vehicles in the market and stream of commerce for sale to the consuming public.

129.    Along with Class Vehicles, Defendant designs, manufactures, and produces all sorts of other vehicles. Given Defendant's other vehicles are capable of stopping with adequate design and manufacture, it logically follows that the Class Vehicles would share the same fate.

130.    The Class Vehicles presumably are capable of safe operation as Defendant produces many other vehicles that are capable of such safety and adequate operation. Unfortunately, this presumption is not reality.

131.    Plaintiff and Class Members used the Class Vehicles in a reasonably foreseeable manner.

132.    At all times, Defendant held final manufacture approval authority for the subject Class Vehicles.

133.    Class Vehicles contain a defect, as discussed earlier, in which the piston oil rings may were manufactured incorrectly, which can result in engine failure or catch fire. This failure deviates from the adequate design. But for the failure of the oil rings, due to its improper manufacture, the engine of the Class Vehicles would work.

134.    The Class Vehicles' defect is excessively dangerous. The risk of danger inherent in the Class Vehicles design and manufacture outweighs any benefit of the design.

135.    Defendant knew or should have known that Plaintiff and the Class Members would purchase and use the Class Vehicles without inspection for defect. Aside from being entirely

uncommon for a consumer to disassemble and inspect a vehicle, it is also unlikely to be permitted by Defendant's dealerships and/or other resellers.

136.    As a result of this faulty manufacture of such oil rings, the Class Vehicles are now relatively worthless when compared to their original purchase price and relative value and are unsafe.

137.    Plaintiff seeks recovery for his economic harm based on overpayment, loss in value, or loss of usefulness emanating from the loss of the benefit of the bargain upon purchase of the class vehicle.

138.    Given the loss of value and lack of safety, Plaintiff and the Class Members have been damaged and will continue to suffer damages.

## COUNT VI
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301 *ET SEQ.*)

139.    Plaintiff incorporates paragraphs 1-55 as if fully set forth herein.

140.    Plaintiff brings this Count individually and on behalf of the Classes.

141.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

142.    Defendant is a "supplier" and "warrantor" within the meaning of the MMWA.

143.    The Class Vehicles are "consumer products" within the meaning of the MMWA.

144.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

145.    Defendant's express warranties are written warranties within the meaning of the MMWA.

146. Defendant breached its warranties by offering for sale and selling the Class Vehicles, which were by design and construction defective and unsafe due to the Recall. Defendant's actions subjected Plaintiff and the Class to danger as well as monetary damages in that the Class Vehicles are inherently worth less compared to their value had the Class Vehicles been free of the Oil Ring Defect.

147. Additionally, Plaintiff and Class Members suffered damages in that they have been greatly inconvenienced by this Recall and Defect as Plaintiff and the Class Members have had to collectively spend thousands of hours and thousands of dollars in time and costs related to repairing the Oil Ring Defect.

148. Defendant has breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Class, when the Vehicles fail to perform due to the Defect.

149. As a result of these breaches, Plaintiff and Class Members have suffered damages.

150. Plaintiff and Class Members seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Class may be entitled.

151. Plaintiff and Class Members suffered injury through Defendant's conduct in that Plaintiff and the Class are now owners of vehicles that are worth significantly less, given the Defect and the notoriety therein.

152. Plaintiff seeks the return of the purchase price, or alternatively for a reduction of the purchase price based on loss of the benefit of the bargain or the difference between the value of the vehicle as delivered and the value it would have had if it had been delivered without the Oil Ring Defect.

153.    Plaintiff and Class Members suffered injury through Defendant's conduct in that Plaintiff and the Class have, or will have to, spend hours upon hours of their own time, and thousands of dollars in towing fees, in seeking repair for these Class Vehicles. Regardless of Defendant's free repair, Plaintiff and the Class are still required to spend hours in time and thousands of dollars in bringing their Vehicles to Defendant's dealership for repair.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the Classes, requests that the Court enter judgment in his favor and against Defendant, awarding as follows:

A.  Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.  Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C.  Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D.  Scheduling a trial by jury in this action;

E.  Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F.  Award Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G.  Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated March 6, 2025

                                         Respectfully Submitted,

                                         By: /s/ Stuart A. Carpey

                                         CARPEY LAW, P.C.
                                         Stuart A. Carpey
                                         600 W. Germantown Pike, Suite 400
                                         Plymouth Meeting, PA 19462
                                         Tel: 610-834-6030
                                         Fax: 610-825-7579
                                         scarpey@carpeylaw.com
                                         Attorneys for Plaintiff and Putative Class